IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD BORELLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2002-cv-51-JPG |
| ) | |
| RICHARD ALLISON, LISA GALES, ) | |
| JOHN LIEFER, and JOHN INMAN[1], ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on Magistrate Judge Philip M. Frazier's Report and Recommendation (Doc. 35) recommending that summary judgment be granted in favor of the defendants on all claims in this case. The Magistrate considered defendants' motion for summary judgment (Doc. 24) and accompanying memorandum of law (Doc. 25), plaintiff's memorandum in opposition (Doc. 30), and what's in essence defendants' reply brief (Docs. 31, 32) in reaching his decision. Plaintiff timely filed objections to the report and recommendation (Doc. 36), and defendants responded to those objections (Doc. 38); accordingly, this Court's review is de novo. 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b). Having carefully considered the materials listed above, the Court will REJECT the report and recommendation and DENY summary judgment.

---

[1] The record in this case reveals that plaintiff misspelled John Inman's name when filing the complaint. The Clerk of Court is DIRECTED to modify the record to correct this error, and all subsequent documents should be captioned to reflect the correct spelling.

Until just recently, Illinois state prisoner Ronald Borello, the plaintiff in this case, resided at the Menard state prison, located on the banks of the Mississippi in Chester, Illinois.  In this 42 U.S.C. §1983 lawsuit he accuses the defendants of violating his constitutional right to be free from cruel and unusual punishment.  Our story begins on January 23, 2001, a date when it's undisputed that Borello's "cellie," inmate Roberto Abadia, gave him a radio blow to the side of the face.  Here's how Randy Brackett, an inmate also present in the gallery during the attack, described what he saw: "I was awaken[ed] by a loud noise on the gallery and hear[d] [Borello] yell, '[G]et me out of this f**king cell.'  I looked out on the gallery and s[aw] [Borello] being le[d] out of his cell toward an awaiting [nurse] (Lisa [Gales]) as he was holding a towel or cloth over his face.  As the [nurse] pulled the cloth away from [Borello's] face[,] it looked as if his eye was hanging on his cheek."  Neither the Eighth Amendment nor §1983 provides redress for injuries caused by intentional torts committed by private actors–as opposed to ones resulting from constitutional torts committed under color of law–so one would suspect that there's more to this story than what we've heard thus far.  And there is.  For one thing, everyone agrees that Abadia had been acting strangely for two weeks prior to the attack. Not only did he repeatedly bang his head against the cell wall, pace back and forth incessantly, and fold his arms in an unusual manner, all for hours on end each day; but on January 12th he took a swing at Borello, though Borello managed to parry the blow, and on January 16th he packed up his gear and announced that his family was in the parking lot waiting to pick him up. (This was strange, we later learn,

because Abadia had considerable time left on his sentence.)  While Borello found Abadia's behavior "bizarre" all along, Abadia's stated plan to leave was the straw that broke the camel's back.  Nurse (and defendant) Lisa Gales happened to be in the gallery that day, and she saw Abadia packing.  Prompted by Borello, who described Abadia's conduct for the past two weeks to her, and correctional officer John Liefer, who added the part about Abadia's remaining prison term, she decided to send Abadia over for a visit with the prison doctor, Vallabhani.  For what it's worth, Borello testified in his deposition that Liefer was just as aware of Abadia's odd behavior during this time as Borello was.  In any event, Abadia returned to the cell fifteen minutes later, at which point Borello asked to see captain (defendant) John Inman, and he was promptly taken there.  In the meeting, Borello recounted Abadia's strange conduct–including the swing at Borello and Abadia's head-banging, pacing and other strange mannerisms–and asked to be moved to a different cell out of fear that Abadia might later attack him.  That much seems undisputed in this case, though things get fuzzy from there.  Inman says he offered to move Borello to another cell but Borello declined; Borello says Inman and defendant Richard Allison, Borello's casework supervisor, called him a "bug" and sent him away.  The parties agree that the issue at this point in the case is whether these facts constitute an absence of evidence such that summary judgment should be granted in favor of the defendants.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1984).

      There's little question as to the controlling legal principles.  (This also explains

why the Court rejects defendants' qualified immunity defense out-of-hand.  It's untenable to say that prison officials don't know what actions in this area are illegal.)  The rule is simply stated: "A prison official's deliberate indifference to a substantial risk of serious harm violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  This inquiry consists of both an objective and a subjective component; at this stage of the litigation, the critical question is whether a reasonable juror could find: one, the requisite level of risk existed; two, the defendants knew of that risk and disregarded it anyway.  See *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004).  So viewed, summary judgment in this case must be denied.

      Consider point one first.  Recall from above that Abadia attacked Borello one week after Borello asked prison officials to move him out of the cell the two men shared.  Borello feared physical violence at the hands of Abadia; Abadia's actions during the past two weeks formed the basis for that concern.  Abadia had banged his head against the cell wall daily for hours on end; he'd taken one swing at Borello; and his professed intent to leave the prison was inconsistent with the reality of the situation.  Some might say that violence was therefore imminent; others, that it wasn't unexpected at least.  It follows that a jury could reasonably conclude that a substantial risk of serious injury existed–and that it existed prior to the attack at issue here–in that Abadia might suddenly snap and erupt into physical violence against the only other human being in his cell: Borello.

      On now to point two.  That Borello told the defendants how Abadia had been

acting seems undisputed; each defendant admitted as much in their depositions in this case. Thus, in the face of such evidence it's well-nigh inconceivable how one might argue that a jury couldn't reasonably conclude that the defendants didn't know of the risk involved here. Maybe they thought Borello was lying or exaggerating, to be sure. But if so, that's a jury question. In any event, defendants stake their claim on the principle of reasonable reliance as set forth in cases like *Allen v. Rockford*, 349 F.3d 1015, 1020 (7th Cir. 2003). True enough, a good faith belief is inconsistent with deliberate indifference. But given that we're not told exactly what Vallabhani told the defendants (if in fact he told them anything, and assuming they relied on his advice), and, equally important, what they told him before the evaluation–i.e., did they give him all the material facts?–there's simply no way of determining at this point whether they genuinely and reasonably relied on the advice.

The Magistrate expresses concern in his report that the defendants' conduct may not have been the legal cause of Borello's injury. Neither party raised the issue in their briefs, and the conclusion is hard to justify. Given the procedural posture of this case, he's essentially saying that no reasonable juror could find that the defendants' deliberate indifference toward the risk of Abadia assaulting Borello proximately caused Borello's injury. Abadia's tortious (and perhaps criminal) conduct presumably broke the chain of causation. But the question is whether the defendants' actions exposed Borello to an increased risk of the act ultimately causing the injury, see RESTATEMENT (SECOND) TORTS § 449 (1965), and a jury could reasonably answer "yes"

to that question. Suppose a train negligently fails to drop a passenger off at her destination, and therefore the carrier puts her up in a hotel for the night. Suppose further that the hotel catches fire due to its own negligence. The carrier isn't liable for the passenger's resulting injury; it could neither foresee the injury nor provide against it. See *Central of Georgia Ry. v. Price*, 32 S.E. 77, 77-78 (Ga. 1898). On the other hand, suppose that instead of putting the passenger up in a hotel, the carrier drops her off at the next stop, a mile down the tracks in an unsettled area. The carrier is then responsible for criminal acts committed against the passenger by third parties as she walks back to where she should have been left off; the train's negligence foreseeably exposes the passenger to a heightened risk of being assaulted, the precise harm she then suffers. See *Hines v. Garrett*, 108 S.E. 690, 695 (Va. 1921). Just so here. Injuries caused by such things as falling ceiling tiles or faulty electrical wiring, like the hotel fire, couldn't have been foreseen or guarded against by the defendants based on their knowledge in this case. Likewise, leaving Borello in the cell with Abadia wouldn't increase the risk of injury from such events happening to Borello. So under those circumstances, the defendants' (assumed) deliberate indifference toward Borello wouldn't be the proximate cause of any injuries he received on account of those events. But that's not what we have here; in this case the defendants' (again, assumed) deliberate indifference to the risk that Abadia would assault Borello was precisely the risk that later materialized. Or so a jury could reasonable conclude, which is enough to deny summary judgment.

For the foregoing reasons the Magistrate's report and recommendation (Doc. 35) is **REJECTED**.  Defendants' motion for summary judgment (Doc. 24) is **DENIED**.

**IT IS SO ORDERED.**

**Dated: July 28, 2005.**

                                           **/s/ J. Phil Gilbert**
                                           **J. PHIL GILBERT**
                                           **U.S. District Judge**